# United States Court of Appeals

*for the*

# Fifth Circuit

Case No. 26-50071

WENDY DAVIS; DAVID GINS; TIMOTHY HOLLOWAY,

*Plaintiffs-Appellees,*

v.

JOEYLYNN MESAROS; ROBERT MESAROS; RANDI CEH; STEVE CEH,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS IN CASE NO. 1:21-CV-565,
HONORABLE ROBERT L. PITMAN, U.S. DISTRICT JUDGE

## BRIEF FOR DEFENDANTS-APPELLANTS
## RANDI CEH AND STEVE CEH

JASON C. GREAVES
BINNALL LAW GROUP
*Attorney for Defendants-Appellants Cehs*
717 King Street, Suite 200 Alexandria,
Virginia 22314
(703) 888-1943
jason@binnall.com

# CERTIFICATE OF INTERESTED PERSONS

***Davis, et al. v. Mesaros, et al.*, No. 26-50071**

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

<u>Plaintiffs-Appellees</u>

- Wendy Davis
- David Gins
- Timothy Holloway

<u>Defendants-Appellants</u>

- Joeylynn Mesaros
- Robert Mesaros
- Randi Ceh
- Steve Ceh

<u>Counsel for Defendants-Appellants</u>

For Randi Ceh and Steve Ceh:

- Jason C. Greaves, Binnall Law Group, PLLC

- Martin K. Etwop, Remnant Law

For Joeylynn Mesaros and Robert Mesaros:

- Jerad W. Najvar, Chalmers, Adams, Backer & Kaufman LLC

Counsel for Plaintiffs-Appellees

Willkie Farr & Gallagher LLP:

- Aaron E. Nathan

- Amy R. Orlov

- Jamielah I. Yancey

- Michael J. Gottlieb

- Noah Mussmon

- Rebecca N. Heath

- Robert J. Meyer

- Samuel Gilbert Hall

The Protect Democracy Project:

- Benjamin L. Berwick

- Cerin Lindgrensavage

- Jared Fletcher Davidson

- JoAnna Barbara Suriani

- Rodkangyil Orion Danjuma

Texas Civil Rights Project:

- Sarah Xiyi Chen

- Veronikah Rhea Warms

- Travis Walker Fife

- Nina Oishi

Leon Cosgrove Jimenez, LLP:

- Heaven C. Chee

- Sam Thomas Linn

Persons/Entities with Financial Interest in the Outcome

- Citizens Defending Freedom, a nonprofit organization that has provided financial support for the legal defense of Defendants-Appellants Randi Ceh and Steve Ceh.

No other persons, associations of persons, firms, partnerships, corporations, subsidiaries, affiliates, parent corporations, guarantors, insurers, or other legal entities are known to have a financial interest in the outcome of this litigation.

/s/ *Jason C. Greaves*
Jason C. Greaves
jason@binnall.com

*Attorney for Ceh Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument. This appeal presents important questions concerning the standard for awarding attorney's fees to prevailing defendants under 42 U.S.C. § 1988 in the increasingly common scenario where private parties weaponize the Reconstruction-era civil rights statutes against fellow citizens engaged in First Amendment activity. Oral argument would materially aid the Court's consideration of these issues, including this Court's prior observation that Appellees' "invocation of the Support-or-Advocacy Clause is unprecedented in the statute's 152-year history." Record on Appeal ("ROA") at 3908.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...........................................i

STATEMENT REGARDING ORAL ARGUMENT ..................................iv

TABLE OF CONTENTS .................................................................... v

TABLE OF AUTHORITIES ...........................................................vii

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF ISSUES ..................................................................1

STATEMENT OF THE CASE ............................................................2

SUMMARY OF THE ARGUMENT .......................................................6

STANDARD OF REVIEW ................................................................10

ARGUMENT ...............................................................................10

I.   The Cehs should recover attorney's fees because this action was frivolous and groundless.......................................................11

    a.   At no point could Appellees establish a prima facie case. ...............................................................................12

    b.   This Court signaled that Appellees' theory was without foundation. ......................................................................16

    c.   The district court's denial of prior motions does not immunize Appellees.......................................................19

II.  The District Court Erred by Mechanically Applying the *Christiansburg* Standard...........................................................21

    a.   The district court erred by disregarding the plain text of § 1988(b). ...............................................................22

    b.   The district court erred by selectively citing § 1988's legislative history and relying on distinguishable precedent....................................................................23

CONCLUSION ................................................................................. 28

CERTIFICATE OF SERVICE ......................................................... 29

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS ......................................................................... 30

# TABLE OF AUTHORITIES

**Cases**

*BedRoc Ltd. v. United States,*
541 U.S. 176, 183 (2004)......................................................................23

*Bray v. Alexandria Women's Health Clinic,*
506 U.S. 263 (1993)........................................................................7, 13

*Brown v. Board of Education,*
347 U.S. 483 (1954)..............................................................................24

*Bryan v. City of Madison, Miss.,*
213 F.3d 267, 276 (5th Cir. 2000) ...................................................7, 14

*Cantu v. Moody,*
933 F.3d 414, 419 (5th Cir. 2019) ...................................................7, 13

*Christiansburg Garment Co. v. EEOC,*
434 U.S. 412 (1978)..........................1, 6, 8, 10, 11, 16, 21, 23, 25, 26, 27

Crawford v. Western Electric Co.,
614 F.2d 1300 (5th Cir. 1980) .....................................................26, 27

*Cruz v. Hauck,*
762 F.2d 1230, 1233 (5th Cir.1985) ...................................................10

*Dean v. Riser,*
240 F.3d 505, 507 (5th Cir. 2001) ...............................................10, 26

*Flowers v. Jefferson Hosp. Ass'n,*
49 F.3d 391, 392–93 (8th Cir. 1995) ...............................................8, 20

*Fox v. Vice,*
563 U.S. 826, 833 (2011)..........................................6, 9, 11, 16, 21, 24

*Gill v. Farm Bureau Life Ins. Co. of Missouri*,
  906 F.2d 1265, 1269–70 (8th Cir. 1990) ...................................14, 16, 17

*Griffin v. Breckenridge*,
  403 U.S. 88, 102–03 (1971)................................................................6, 13

*Hills v. Gautreaux*,
  425 U.S. 284 (1976).............................................................................24

*Kovac v. Wray*,
  109 F.4th 331, 335 (5th Cir. 2024).....................................................23

*Marre v. United States*,
  117 F.3d 297, 301 (5th Cir. 1997) ......................................................10

*Matta v. May*,
  118 F.3d 410, 413 (5th Cir. 1997) ......................................................10

*Mercury Air Grp., Inc. v. Mansour*,
  237 F.3d 542, 548 (5th Cir. 2001) ......................................................10

*Newberry v. East Texas State University*,
  161 F.3d 276, 281 n.2 (5th Cir. 1998) ................................................14

*O'Connor v. Donaldson*,
  422 U.S. 563 (1975).............................................................................24

Plemer v. Parsons-Gilbane,
  713 F.2d 1127 (5th Cir. 1983) ......................................................26, 27

*United Broth. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*,
  463 U.S. 825, 828–29 (1983)..........................................................6, 13

*United States v. Mississippi*,
  921 F.2d 604, 609 (5th Cir. 1991) ......................................................10

*Vaughan v. Lewisville Indep. Sch. Dist.*,
  62 F.4th 199, 204–05 (5th Cir. 2023) ......................................6, 8, 11, 19

*Wilson v. Mayor of St. Francisville*,
  135 F.3d 996, 998 (5th Cir. 1998) .......................................................10

### Statutes

28 U.S.C. § 1291...................................................................................1

28 U.S.C. § 1331...................................................................................1

42 U.S.C. § 1985(3) ...........................................................................1, 12

42 U.S.C. § 1988....................................................................................1

42 U.S.C. § 1988(b) ....................................................................6, 8, 10, 22

### Other Authorities

110 Cong. Rec. 6534, 12724, 13668, 14214 (1964) ...............................26

H.R. Rep. No. 94-1558, at 6 (1976) .................................................22, 24

# JURISDICTIONAL STATEMENT

The district court had statutory jurisdiction because the claims arose under federal law. *See* 28 U.S.C. § 1331. The District Court for the Western District of Texas entered a final judgment on August 1, 2025. ROA at 29127–29. The district court denied Appellants' Motion for Attorney's Fees and Costs Pursuant to 42 U.S.C. § 1988 on December 19, 2025. ROA at 29743–29763. Appellants filed a timely notice of appeal on January 20, 2026. ROA at 29766–29767. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

# STATEMENT OF ISSUES

1. Whether the district court abused its discretion in concluding that Plaintiffs' claims under 42 U.S.C. § 1985(3) were not frivolous, unreasonable, or groundless.

2. Whether the *Christiansburg* standard for awarding attorneys' fees to prevailing defendants under 42 U.S.C. § 1988 should be applied where private individuals are sued for engaging in core First Amendment activity.

## STATEMENT OF THE CASE

Steve and Randi Ceh are ordinary, working-class Americans who organized a weekly, family-friendly "Trump Train" in their community of New Braunfels, Texas, during the 2020 presidential election. Organized through a Facebook page, neighbors would gather in a parking lot and participate in a "flag run" through town, flying patriotic and pro-Trump flags from their vehicles. The undisputed evidence showed that the Cehs' gatherings respected the law, discouraged divisive messaging and vulgarity, gave back to the community, and accommodated those who disagreed.

On October 30, 2020, Randi Ceh posted publicly available information about a Biden campaign bus passing through New Braunfels on her Trump Train Facebook page, so that group members could show support for President Trump by flying their flags as the bus traveled on I-35. Neither Steve nor Randi Ceh participated in the actual "flag run" that day—Randi briefly filmed the procession as she passed the bus on her way home from work.

Notwithstanding these facts—and the absence of any allegation that the Cehs directed violence, drove recklessly, struck any vehicle, or communicated with co-defendants about doing so—Wendy Davis (a former state senator and Democratic surrogate for the Biden-Harris campaign), together with two campaign staffers, sued the Cehs under 42 U.S.C. § 1985(3) (which they repeatedly branded the "Ku Klux Klan

Act"), along with state-law civil conspiracy and civil assault claims. Appellees were represented by a coalition of well-funded organizations and Big Law firms, and used public statements, press releases, and social-media campaigns to portray the Cehs as Klansmen-like racists.

In 2023, this Court considered a petition for writ of mandamus from the Mesaros Defendants. While ultimately denying the writ on the demanding mandamus standard, this Court's panel opinion made several observations regarding the frivolity of this action:

> As its name suggests, Congress passed the Klan Act to address the *racially motivated* "murders, whippings, and beatings committed by rogues in white sheets in the postbellum South."

ROA at 3906 (emphasis added).

> Respondents' invocation of the Support-or-Advocacy Clause is unprecedented in the statute's 152-year history.

*Id.* at 3908.

> And what little precedent exists cuts squarely against respondents.

*Id.*

> [I]t is unclear how respondents' theory comports with the text of the Support-or-Advocacy Clause.

*Id.* at 3909.

> There are myriad reasons for preferring petitioners' reading of statutory text.

*Id.* at 3910.

> [R]espondents offer no allegation that petitioners conspired to side-swipe anyone.

*Id.* at 3909. Appellees, however, persisted with the litigation.

A jury trial in this matter was held from September 9, 2024, through September 23, 2024. ROA at 29127–29. On September 23, 2024, the jury returned a verdict of not liable on all claims as to Defendants Randi Ceh and Steve Ceh, as well as fellow Defendants Joeylynn Mesaros, Robert Mesaros, and Dolores Park, entirely vindicating their exercise of free speech in demonstrating support for President Donald J. Trump. ROA at 26942–47.

Plaintiffs presented zero evidence to suggest that the gatherings organized by the Cehs were violent or had any nefarious purpose. This was entirely protected speech and political activity under the First Amendment.

The undisputed evidence showed that on October 30, 2020, the Cehs encouraged their group to do just what they had done previously: peacefully demonstrate with a flag run. Randi Ceh posted publicly available information she had heard about a Biden campaign bus passing through New Braunfels on their Trump Train Facebook page. She did so to inform their group in case any of them wanted to show support for President Trump by following the bus on I-35 through New Braunfels with their Trump flags flying. Again, this was protected speech, and there was zero evidence to suggest that Ms. Ceh had any

nefarious intention or even any knowledge of the bus's destination or plans. The Cehs did not even participate in this flag run, with Randi Ceh only able to film it briefly as she passed the bus on her way home from work.

The remaining "evidence" amounted to the Ceh's public expressions of support for the Trump Train, and innuendo about their conservative political and religious views. Once again, all of this is absolutely protected speech under the First Amendment, and none of it suggested any conspiracy or pre-meditated plan to deprive anyone of their civil rights, much less on the grounds of racial animus.

While the Ceh's were fully vindicated, nothing can fully repair the damages wrought by Wendy Davis and her compatriots to the Ceh family. Because of this litigation and Plaintiffs' counsel's venomous portrayal of the Defendants in the media, the Cehs and their children have endured accusations of racism, and a constant barrage of online harassment and abuse. They fought for their livelihoods and their reputations, not knowing if or when the madness would end, whether they would lose their jobs, and whether they would be hit with a debilitating judgment. In doing so, the Cehs incurred significant attorney's fees.

The Cehs subsequently moved to obtain their attorney's fees, however, the district court denied the Cehs' motion, concluding that the

case was not frivolous, and that the *Christiansburg* standard applied with full force. Accordingly, the Cehs' now appeal that order.

## SUMMARY OF THE ARGUMENT

Section 1988(b) authorizes a district court, in its discretion, to award reasonable attorney's fees to the prevailing party—other than the United States—in any action to enforce § 1985. 42 U.S.C. § 1988(b). Under *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), a prevailing defendant may recover fees when the plaintiff's claim was "frivolous, unreasonable, or groundless," or the plaintiff continued litigating after it clearly became so. *Id.* at 422. This standard "protects defendants from burdensome litigation lacking any legal or factual basis," *Fox v. Vice*, 563 U.S. 826, 833 (2011) (quoting *Christiansburg*, 434 U.S. at 420), and relevant factors include whether the plaintiff established a prima facie case, whether controlling precedent foreclosed the claim, the strength of the evidence, and whether the case reached trial, *Vaughan v. Lewisville Indep. Sch. Dist.*, 62 F.4th 199, 204–05 (5th Cir. 2023).

Appellees' amended complaint invoked the Reconstruction-era "Ku Klux Klan Act," 42 U.S.C. § 1985(3), but never pleaded—much less proved—an essential element: a conspiracy motivated by class-based, animus. *See Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971); *United Broth. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463

U.S. 825, 828–29 (1983). This Circuit has repeatedly held that § 1985(3) reaches only race-based conspiracies. *Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019); *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000). The Supreme Court has likewise refused to extend the statute beyond racial animus. *See, e.g. Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993). The complaint contained only conclusory allegations of a "conspiracy" to "ambush" and "terrorize" a Biden campaign bus, with no facts showing the Cehs agreed with anyone to violate the law, much less on account of race. The Cehs' only alleged acts—organizing lawful Trump Train rallies, maintaining a public Facebook page, sharing publicly available information about the bus route, and expressing political support for President Trump—do not constitute racial animus or unlawful agreement, and no allegation linked the Cehs to reckless driving, physical contact with the bus, or any violent act. As this Court previously observed with respect to the Mesaros Defendants, "respondents offer no allegation that petitioners conspired to side-swipe anyone." ROA at 3909.

This Court's mandamus order put Appellees on unmistakable notice that their theory was meritless. The panel described Appellees' invocation of the Support-or-Advocacy Clause as "unprecedented in the statute's 152-year history," noted that "what little precedent exists cuts squarely against" them, and found their reading textually incongruous with *Bray and Carpenters*. *Id.* at 3906–10. Despite this clear signal,

7

Appellees pressed forward through discovery and a two-week jury trial. A claim that lacks any supporting precedent, contradicts controlling authority on the immediately preceding statutory clause, and rests on naked legal conclusions is frivolous as a matter of law. *See Christiansburg*, 434 U.S. at 422.

The district court's earlier denials of motions to dismiss and summary judgment do not preclude a fee award. Surviving dispositive motions is merely one factor, not dispositive, *Vaughan*, 62 F.4th at 205 n.22, and a frivolous case does not become non-frivolous merely because a district court erred in allowing it to proceed. *See Flowers v. Jefferson Hosp. Ass'n*, 49 F.3d 391, 392–93 (8th Cir. 1995). Here, the district court's rulings were directly contrary to this Court's subsequent analysis in the same case, and allowing prior erroneous rulings to immunize plaintiffs from fee liability would render § 1988(b) a nullity precisely when defendants of limited means need it most.

Even if this Court were not persuaded that the claim was frivolous under the traditional *Christiansburg* test, that test should not apply mechanically here. Section 1988(b) uses the neutral term "prevailing party" without distinction between plaintiffs and defendants, and the statute's text contains no heightened standard for defendants. *See* 42 U.S.C. § 1988(b). Congress knew how to limit fee awards to plaintiffs when it wished to do so, but chose not to. The *Christiansburg* standard arose in a materially different context—a government plaintiff (the

EEOC) suing a private employer under Title VII, and the Court's analysis was driven by concerns about chilling government enforcement of civil rights and protecting plaintiffs of limited means against well-resourced governmental defendants. Those concerns are inverted here, as Appellees include a former state senator, Biden-Harris campaign surrogates, and well-funded organizations represented by Big Law who sued working-class citizens for core First Amendment activity— organizing political rallies and expressing political viewpoints. The Cehs are precisely the "little guy" Congress sought to protect from burdensome, unfounded litigation. *See Fox*, 563 U.S. at 833.

Mechanically applying *Christiansburg* in this setting creates a one-way ratchet: politically motivated plaintiffs of superior resources can weaponize § 1985(3) against private citizens with little fear of fee liability, even after an adverse jury verdict. This inverts the statute's purpose and chills protected speech. The legislative history and equitable considerations underlying § 1988(b) and *Christiansburg* affirmatively support a fee award here to deter vexatious suits and restore balance.

For these reasons, the district court's denial of fees was an abuse of discretion and should be reversed. The Cehs respectfully request that this Court remand with instructions to award reasonable attorney's fees.

## STANDARD OF REVIEW

This Court reviews the denial of a motion for attorney's fees under 42 U.S.C. § 1988 for abuse of discretion. *Dean v. Riser*, 240 F.3d 505, 507 (5th Cir. 2001) (citing *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir.1985)). A district court abuses its discretion when its "ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Mercury Air Grp., Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001) (quoting *Matta v. May*, 118 F.3d 410, 413 (5th Cir. 1997)). Underlying legal conclusions, however, are reviewed de novo. *Dean*, 240 F.3d at 507 (citing *Marre v. United States*, 117 F.3d 297, 301 (5th Cir. 1997)). And "underlying findings of fact are subject to review for clear error." *Id.* (citing *Wilson v. Mayor of St. Francisville*, 135 F.3d 996, 998 (5th Cir. 1998); *United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991)).

## ARGUMENT

Section 1988(b) provides that, "[i]n any action or proceeding to enforce [42 U.S.C. § 1985], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Under *Christiansburg*, a prevailing defendant may recover fees where the plaintiff's underlying claim is "frivolous, unreasonable, or groundless," or where "the plaintiff continued to litigate after it clearly became so." *Christiansburg*, 434 U.S. at 422. This Court has identified several factors to aid in that

determination, including (1) whether the plaintiff established a prima facie case; (2) whether "squarely controlling precedent" foreclosed the plaintiff's legal argument; (3) whether the plaintiff's evidence was lacking; (4) whether the defendant offered to settle; and (5) whether the case was dismissed before trial. *Vaughan*, 62 F.4th at 204–05. The purpose of this standard is "to protect defendants from burdensome litigation having no legal or factual basis." *Fox v. Vice*, 563 U.S. 826, 833 (2011) (quoting *Christiansburg*, 434 U.S. at 420).

Appellants' arguments here proceed in two parts. First, even under the *Christiansburg* standard, this case was frivolous and groundless from inception. Minimally, Appellees became aware that that their § 1985(3) claim was frivolous and groundless yet continued to litigate it. Second, regardless, the *Christiansburg* test is ill-suited to the unprecedented posture of this case, in which private parties of significant means have weaponized a Reconstruction-era civil rights statute to punish ordinary citizens for engaging in core First Amendment activity.

## I. The Cehs should recover attorney's fees because this action was frivolous and groundless.

The Cehs should recover fees under 42 U.S.C. § 1988 because Appellees' lawsuit was vexatious, politically motivated, and could not have possibly established a prima facie case. Appellees failed to plead

an essential element of the claim and failed to allege or present facts that provided grounds for relief to be granted. Appellees further declined to heed to this Court's warning that their theory of the case lacked precedent. Still, the district court denied the Cehs' motion because the court had previously "denied Defendants' motions to dismiss Plaintiffs' claims and denied Defendants' motions for summary judgment after holding that a reasonable jury could find Defendants liable on all of Plaintiffs' claims." ROA at 29750. This was in error.

### a. At no point could Appellees establish a prima facie case.

The Cehs should have never seen the inside of a courtroom. Appellees failed to establish a prima facie case, and as such the litigation should have never proceeded to discovery, much less trial. Appellees alleged that the Cehs violated the "KKK Act." 42 U.S.C. §1985(3); ROA at 1863–65. However, they failed to plead an essential element to the claim, namely, that the Cehs' alleged conspiracy was predicated by race-based animus. Nor did they plead any facts that show animus towards any class at all, much less a racial class. As evidenced by Supreme Court and Fifth Circuit precedent, as well as the Fifth Circuit's interlocutory order, Plaintiffs did not properly plead this action and persisted well after being placed on notice of that inescapable conclusion.

In *Griffin v. Breckenridge*, the Supreme Court ruled that Section 1985(3) provides a remedy for conspiracies to interfere with civil rights when it is motivated by invidious discriminatory animus. *See Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971). To prove a claim under this section, a plaintiff must allege four elements:

> (1) a conspiracy; (2) *for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws*; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Broth. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–29 (1983) (emphasis added). Therefore, to state a claim, it is a prerequisite that a plaintiff alleges a conspiracy to deprive individuals of their rights *because of* a class-based animus.

Neither the Supreme Court nor the Fifth Circuit have expanded this "class-based" animus to mean anything other than "racial animus." *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993) ("Whatever may be the precise meaning of a 'class' for purposes of Griffin's speculative extension of § 1985(3) beyond race, the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors"); *see also Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019)

("the only conspiracies actionable under section 1985(3) are those motivated by racial animus." (citation omitted)); *see also Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000) ("In this circuit, we require an allegation of a race-based conspiracy.") (citing *Newberry v. East Texas State University*, 161 F.3d 276, 281 n.2 (5th Cir. 1998)). Furthermore, the Eighth Circuit has squarely held that the Support-or-Advocacy Clause requires racial animus. *See Gill v. Farm Bureau Life Ins. Co. of Missouri*, 906 F.2d 1265, 1269–70 (8th Cir. 1990). Appellees' only contrary authority consisted of a handful of out-of-circuit district court decisions, none of which engages with this Circuit's authoritative reading of the surrounding statutory text. ROA at 29609–10.

Appellees did not allege any facts connecting the Cehs to any sort of conspiracy, much less one motivated by class-based animus, racial or otherwise. Appellees made only conclusory claims of "conspiracy" to "ambush" and "terrorize" the occupants of a Joe Biden campaign tour bus. *See e.g.*, ROA at 1808, 1812–13, 1825, 1828–29, 1834, 1863–65. The only non-conclusory facts alleged about the Cehs were that they organized weekly "Trump Train" rallies, they operated a community Trump Train Facebook page, they posted information on their Trump Train Facebook page about a Biden campaign bus passing through their town, and they publicly expressed their support for President Trump and opposition to Biden. ROA at 1812–13, 1815–18, 1825, 1831, 1834, 1859–60. None of these allegations has a *thing* to do with racial

animus—and yet, Appellees' counsel insisted upon referring to 42 U.S.C. § 1985(3) as the "Ku Klux Klan Act," both inside and outside of court, repeating *ad nauseum* that the Cehs had violated the "KKK Act," and even depicting the Cehs on social media as Klansmen with white hoods. ROA at 29253–59. This was done to generate headlines, to suggest without evidence that the Cehs and other defendants were racists, and to prejudice the jury against the Cehs.

The only allegations that connected the Cehs to any kind of conspiracy were naked conclusions. None of the facts alleged or uncovered in discovery showed the Cehs communicating directly with any other Defendants to do anything, much less harass or intimidate based on race. Not a single statement attributed to Steve or Randi Ceh represented a call to violence or to violate the law. There is no allegation that Steve or Randi Ceh drove recklessly, or hit the Biden Bus, or encouraged anyone else to do so. Rather, all the narrative suggests is that the Cehs shared public information for the purposes of protesting and shared their political opinions.

None of this could possibly suffice to meet the pleading standards that are necessary to survive a 12(b)(6) motion, much less sustain a verdict of liability, which is why the Cehs were ultimately vindicated. This type of conspiracy requires an agreement to act unlawfully because of race, and the Plaintiffs could not even properly allege an agreement to act unlawfully, much less an agreement with racial animus in mind.

15

When the lack of a crucial element of the claim is combined with the lack of any facts that support even a single element, it is clear this case fulfills the purpose of the *Christiansburg* test. The separate standard, meant to reflect the "quite different equitable considerations" for prevailing defendants, focuses on protecting them "from burdensome litigation having no legal or factual basis." *Fox*, 563 U.S. at 833 (quoting *Christiansburg*, 434 U.S. at 419–20). Without any factual or legal basis for recovery, it is wholly unreasonable to drag defendants of limited means through years of protracted litigation. Put simply, the Cehs are the exact type of defendants that the *Christiansburg* test is meant to protect.

**b.** **This Court signaled that Appellees' theory was without foundation.**

Minimally, Appellees continued to litigate this case even after it clearly became frivolous, unreasonable, or groundless. During the litigation, a panel from the Fifth Circuit signaled that it agrees with the Cehs interpretation of this issue in an order denying a Writ of Mandamus. "As its name suggests, Congress passed the Klan Act to address the *racially motivated* 'murders, whippings, and beatings committed by rogues in white sheets in the postbellum South.'" ROA at 3906 (emphasis added) (quoting *Gill v. Farm Bureau Life Ins. Co. of Missouri*, 906 F.2d 1265, 1269 (8th Cir. 1990)). It further highlighted

the absurdity of the Plaintiffs' application of this statute by stating that "Respondents' invocation of the Support-or-Advocacy Clause is unprecedented in the statute's 152-year history." *Id.* at 3908. "And what little precedent exists cuts squarely against respondents." *Id.*

That panel expressed further confusion at this case and the use of Section 1985(3) when it concluded that: "it is unclear how respondents' theory comports with the text of the Support-or-Advocacy clause." *Id.* at 3909. Pulling no punches, the panel continued with "[t]here are a myriad of reasons for preferring petitioners' reading of the statutory text—not the least of which is that is comports with judicial authorities like *Bray* and *Carpenters*, which interpret the clause immediately preceding the Support-or-Advocacy Clause in §1985(3)." *Id.* at 3910.

Finally, the panel did not only address the meaning of § 1985(3). It opined on the sufficiency of Appellees' allegations by noting that "respondents offer no allegation that petitioners *conspired* to side-swipe anyone," further highlighting that the Appellees' allegations were just legal conclusions couched as facts. *Id.* at 3909, n. 2. Eventually, the panel ruled that it would not grant a Writ of Mandamus because of the extraordinary nature of that remedy. However, it did conclude that one of the main reasons for the denial was that it was "confident that the district court will reach the correct certification decision if given another opportunity." *Id.* at 3912.

Despite this forceful order from the Fifth Circuit and the overwhelming amount of precedent in the Cehs favor, Appellees continued with their frivolous litigation. This was despite the lack of a single case that supported Appellees ability to continue its vexatious lawsuit, and therefore, Appellees failed to establish a prima facie case. As such, there should have been no trial and the usual test of frivolity cuts plainly in the Cehs' favor in this extraordinary circumstance.

Given that it is a prerequisite that a plaintiff alleges a conspiracy to deprive individuals of their rights *because of* a class-based animus, Appellees could not have possibly established a prima facie case against the Cehs. When a plaintiff cannot establish a prima facie case, the case should not proceed to trial. Still, these well-connected and well-funded Appellees dragged ordinary Americans through years of unnecessary litigation for daring to demonstrate support for President Trump, chilling theirs and all other Trump supporters' right to free speech. This is quintessentially frivolous and vexatious litigation, and Appellees should be required to reimburse reasonable attorneys' fees, especially when it became quite clear that their claims would fall short after this Court's order.

When an appellate court tells parties—in the context of denying mandamus only because of that writ's extraordinary nature—that one side's reading is unprecedented, foreclosed by what precedent exists, textually incongruous, and inferior in "a myriad of reasons" to the other

side's reading, the losing position is not merely doubtful—it is groundless within the meaning of § 1988. Even if there were no "squarely controlling" precedent (which itself is debatable in light of *Bray* and *Carpenters*), the totality of the picture—a 152-year statute never before invoked this way, Supreme Court and Circuit authority interpreting the immediately preceding clause to require class-based animus, the Eighth Circuit having already so held, this Court having indicated it would do the same, and Appellees unable to identify any analogous case—amply supports a frivolity finding. Ignoring this constituted an erroneous view of the law.

### c. The district court's denial of prior motions does not immunize Appellees.

In denying the Cehs' fees, the district court relied heavily on the fact that it had denied motions to dismiss and motions for summary judgment, and that the case went to trial. ROA at 29750. Surviving early motions, however, is not dispositive; it is merely one consideration among several. *Vaughan*, 62 F.4th at 205 n.22. Courts are not constrained to any one factor. *Id*. Were it dispositive, a district court's own rulings would be self-immunizing, and any error in denying dispositive motions could never be corrected through fee review. As the Eighth Circuit recognized, merely surviving to trial does not immunize

a plaintiff from a fee award. *See Flowers v. Jefferson Hosp. Ass'n*, 49 F.3d 391, 392–93 (8th Cir. 1995).

The district court's own denials of dispositive motions should not be dispositive to this analysis because they are themselves directly contrary to this Court's reasoning in *In re Mesaros*. A frivolous case does not become non-frivolous merely because the district court erroneously declined to dismiss it. To hold otherwise would render Section 1988's fee-shifting provision unavailable in precisely the cases where it is most needed, where a defendant of limited means is forced to endure years of meritless litigation through trial, because the district court refused to dismiss claims that should have been dismissed at the threshold.

The district court relied on three opinions from this Court for the proposition that it is an abuse of discretion to find a case frivolous where it proceeded through trial despite a defendant's attempts to have it dismissed. ROA at 29750. But none of those cases involved the unique circumstances present here. None of those cases involved a Fifth Circuit opinion issued in the very case under review signaling that the plaintiffs' legal theory was "unprecedented" in the statute's 152-year history, and that "what little precedent exists cuts squarely against" the plaintiffs. The panel's analysis transforms the frivolousness inquiry here. The Cehs were not merely defending against a claim the district court ultimately decided to send to a jury; they were defending against

20

a claim the Fifth Circuit had already identified as legally and factually deficient

The Cehs—working-class citizens of limited means—had to defend a federal civil-rights case all the way through a two-week jury trial. They were forced to engage counsel on the eve of trial and to bear the costs of being publicly branded as racists and conspirators. The jury vindicated them, but the harm caused by the litigation cannot be undone. The fee-shifting statute exists precisely to "protect defendants from burdensome litigation having no legal or factual basis." *Fox*, 563 U.S. at 833 (quoting *Christiansburg*, 434 U.S. at 420).

The district court's denial of fees, on these facts, therefore, was an abuse of discretion.

## II.     The District Court Erred by Mechanically Applying the *Christiansburg* Standard.

Even if this Court is not persuaded that the case was frivolous under the existing *Christiansburg* test, the Cehs respectfully submit that the rigid standard of that test should not apply with full force in this unprecedented posture. This judicially-created standard rests on assumptions about plaintiff–defendant power dynamics that simply do not hold where private citizens are sued by well-funded political opponents for engaging in protected speech.

### a. The district court erred by disregarding the plain text of § 1988(b).

The text of Section 1988 is clear that, as the prevailing party, the Cehs are entitled to their reasonable attorney's fees. Section 1988(b) provides in relevant part: "In any action or proceeding to enforce [42 U.S.C. § 1985], the court, in its discretion, *may allow the prevailing party*, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b) (emphasis added). The statute's use of the neutral term "prevailing party" is unambiguous. It makes no distinction between prevailing plaintiffs and prevailing defendants. If Congress had wished to do so, it could have. In fact, the House Report on the bill expressly stated that both were eligible for fees and that "Congress has not always been that generous." H.R. REP. NO. 94-1558, at 6 (1976). Beyond that, this deliberate choice to allow both to recover was a departure from the normal congressional path. "In about two-thirds of the existing statutes, such as the Clayton Act and the Packers and Stockyards Act, only prevailing plaintiffs may recover their counsel fees." *Id.* Therefore, from this choice and the text itself, Congress did not intend such a rigid presumption against defendants recovering fees. The only type of party Congress expressly chose to exclude from recovering fees was the United States. A plain reading of this statute does not support a presumption against prevailing defendants recovering attorney's fees.

Under settled principles of statutory interpretation, the inquiry "begins with the statutory text, and ends there as well if the text is unambiguous." *Kovac v. Wray*, 109 F.4th 331, 335 (5th Cir. 2024) (quoting *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004)). A plain reading creates no presumption against prevailing defendants.

The district court dismissed this textual argument out of hand, insisting that Supreme Court and Fifth Circuit precedent forecloses any contextual distinction for private parties. ROA at 29751–52. That misses the mark. While *Christiansburg* applied a "frivolous, unreasonable, or groundless" standard, it did so in the specific context of a government plaintiff (the EEOC) suing a private employer under Title VII. 434 U.S. at 414, 422. The Supreme Court never held that the same barrier must apply when private plaintiffs of vastly superior resources sue private defendants of limited means. The district court's approach, treating *Christiansburg* as an absolute and inflexible rule, gave priority to its own interpretation rather than the statute's plain text, an approach this Court has squarely rejected. *See Kovac*, 109 F.4th at 335.

> **b.  The district court erred by selectively citing § 1988's legislative history and relying on distinguishable precedent.**

Even if the text of § 1988(b) left room for ambiguity, the statutory purpose overwhelmingly supports an award of fees to the Cehs. The

legislative history of § 1988 reflects two Congressional aims: (1) to encourage meritorious civil rights enforcement by plaintiffs "of limited means," and (2) to protect plaintiffs from the chilling effect of fee-shifting where well-resourced defendants—particularly government officials—might otherwise deter suits. The House Report explained that the heightened defendant-side standard reflected the reality that "governmental officials are frequently the defendants in cases brought under the statutes covered." H.R. REP. NO. 94-1558, at 7 (citing *Brown v. Board of Education*, 347 U.S. 483 (1954); *Hills v. Gautreaux*, 425 U.S. 284 (1976); *O'Connor v. Donaldson*, 422 U.S. 563 (1975)). The concern was that, were defendants able to recover fees on the same terms as plaintiffs, the resulting "gap between citizens and government officials" would "exacerbate the inequality of litigating strength." *Id.*

Those concerns are inverted here. Appellees are not "disadvantaged persons who are the victims of unlawful discrimination or unconstitutional conduct." *Id.* at 6. They are a former state senator and Biden-Harris campaign surrogate, two well-resourced campaign staff members, and a coalition of well-funded civil rights organizations and Big Law firms. They sued ordinary working-class citizens for engaging in First Amendment-protected speech. The Cehs are the "little guy" whom Congress sought to protect from "burdensome litigation having no legal or factual basis." *Fox*, 563 U.S. at 833.

To apply the *Christiansburg* standard mechanically in this posture is to invert its protective purpose. The standard becomes a one-way ratchet that emboldens politically-motivated plaintiffs to file unprecedented suits against private citizens with near-certainty that no fee award will follow even on the most unfavorable jury verdict. The chilling effect on First Amendment activity is profound: any citizen contemplating organizing a political rally, sharing publicly available information about a political opponent's tour, or expressing strong political opinions must now reckon with the possibility of being dragged through years of federal civil-rights litigation with no realistic prospect of fee recovery if and when they are vindicated.

Indeed, in *Christiansburg*, the Supreme Court analyzed the almost identical attorney's fees provision from Title VII, § 706(k). *See Christiansburg*, 434 U.S. at 418–20. The reasoning discussed herein, both the textual analysis and the congressional considerations, was prevalent throughout the Court's opinion. "It seems clear, in short, that in enacting § 706(k) Congress did not intend to permit the award of attorney's fees to a prevailing defendant only in a situation where the plaintiff was motivated by bad faith in bringing the action." *Id.* at 419. "As pointed out in Piggie Park, if that had been the intent of Congress, no statutory provision would have been necessary, for it has long been established that even under the American common-law rule attorney's fees may be awarded against a party who has proceeded in bad faith."

*Id.* The Court concluded in its examination of this provision's legislative history that Congress intended to "make it easier for a plaintiff of limited means to bring a meritorious suit." *Id.* at 420 (*quoting* 110 CONG. REC. 12724 (1964) (remarks of Senator Humphrey)). As to prevailing defendants, "several Senators explained that its allowance of awards to defendants would serve 'to deter the bringing of lawsuits without foundation,' 'to discourage frivolous suits,' and 'to diminish the likelihood of unjustified suits being brought.'" *Id.* (*quoting* 110 CONG. REC. 13668 (1964) (remarks of Senator Lausche); *id.* at 14214 (remarks of Senator Pastore); *id.* at 6534 (remarks of Senator Humphrey)). While the Court ultimately resolved these competing considerations with the test laid out above, the concerns reflected in the Court's opinion militate in favor of making it easier for the Cehs to recover fees in the same way as a prevailing plaintiff, without the added burden of showing frivolity or lack of foundation. The Cehs' status as defendants does not bar them from an award, and they are the party of limited means that the Court is primarily concerned with, *i.e.*, protecting parties of limited means.

In each of the cases relied upon by the district court in its mechanical application, the dynamics differed significantly from this case. *See* ROA at 29751–52 (citing *Christiansburg*, 434 U.S. at 420—23; *Crawford v. Western Electric Co.*, 614 F.2d 1300 (5th Cir. 1980); *Dean v. Riser*, 240 F.3d 505 (5th Cir. 2001); *Plemer v. Parsons-Gilbane*, 713 F.2d 1127 (5th Cir. 1983)).

In *Christiansburg*, the plaintiff was a government actor, the EEOC. 434 U.S. 412 (1978). Like the cases where the government is the defendant, the heightened standard likewise makes sense when the government is the plaintiff against a private company. At one level, we trust generally that the government does not bring frivolous cases. At another level, the government plaintiff in that case, the EEOC, was vindicating the civil rights of an individual against a corporation in an employment discrimination action. *Id.* at 414.

In *Crawford*, the defendant was a large corporation. *Crawford*, 614 F.2d at 1303. Furthermore, *Christiansburg* was handed down in the middle of the proceedings for *Crawford*, after a fee award had already been granted to the defendants. *Crawford*, 614 F.2d at 1321. The Fifth Circuit then reversed and remanded for further factual development, recognizing the "double standard for attorneys' fees awards" articulated in *Christiansburg*. *Id.* The main problem with *Crawford* is that the Fifth Circuit, in that same opinion, reversed in substantial part the dismissal of the plaintiffs' claims, therefore effectively nullifying the award of fees to the Defendant anyway. *See id.*

Likewise, *Dean* involved an individual defendant sued in both individual *and official* capacities—the classic government-official context the House Report addressed. *Dean*, 240 F.3d at 507. And *Plemer* involved an employment dispute against a large company. *Plemer*, 713 F.2d at 1130–31.

It is, therefore, appropriate to adopt a more flexible approach that recognizes the changed landscape of civil rights litigation. Awarding fees to the Cehs would restore the balance Congress intended: deterring vexatious litigation while protecting the truly disadvantaged party.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's denial of attorney's fees and remand with instructions to award the Cehs their reasonable fees of $135,000, or such other amount as the district court deems reasonable.

Dated: May 20, 2026

Respectfully submitted,

*/s/ Jason C. Greaves*
Jason C. Greaves
Tex. Bar No. 24124953
jason@binnall.com
BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943

*Attorney for Ceh Appellants*

## CERTIFICATE OF SERVICE

I certify that on May 20, 2026, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ *Jason C. Greaves*
Jason C. Greaves
jason@binnall.com

*Attorney for Ceh Appellants*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS**

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,140 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word (the same program used to calculate the word count).

*/s/ Jason C. Greaves*
Jason C. Greaves
jason@binnall.com

*Attorney for Ceh Appellants*